IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY U.,[1] | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-cv-1479-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
|         Defendant. | ) |
| | ) |

**ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in February 2021, alleging an onset date of November 22, 2019. Tr. 492. After holding an evidentiary hearing on January 19, 2023, ALJ Thomas Auble denied the application. Tr. 287. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ failed to consider Plaintiff's anxiety as a medically determinable impairment that impacted her work-related abilities.

2. The ALJ failed to consider Plaintiff's lumbar spine impairment as a medically determinable impairment which impacted her work-related abilities.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 404.1520(a)(4). An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability. *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted). However, the undersigned does not act as a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

## The Decision of the ALJ

The ALJ followed the required five-step analytical framework. He determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 22, 2019 through her last date insured of December 31, 2021. Tr. 279. He determined that Plaintiff had the following severe impairments through the last date insured: degenerative disc disease, cervical spine; degenerative joint disease of the left shoulder; and bilateral carpal tunnel syndrome, status-post right carpal tunnel release and right elbow cubital tunnel release. Tr. 279. However, he found that through the date last insured, Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the applicable regulations.

The ALJ found that Plaintiff has the residual functional capacity to:

Perform light work…[she] can lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand/walk for 6 hours and sit for up to 6 hours in an 8 hour work day with normal breaks. She can never climb ladders, ropes or scaffolds but she can occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch,

and crawl. She is capable of occasional bilateral overhead reaching, frequent bilateral handling and fingering, and can never be exposed to unprotected high places or unguarded moving mechanical parts.

Tr. 281. The ALJ found that Plaintiff could perform past relevant work as a stock clerk and commercial cleaner through the date last insured. Tr. 285. Moreover, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" based upon the testimony of the vocational expert and in consideration of her "age, education, work experience, and residual functional capacity." Tr. 286.

## The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

**1.     Relevant Medical Records**

Plaintiff saw Dr. Manish Mathur at the Staunton Clinic to establish care on June 8, 2018. Tr. 622. Dr. Mathur noted that "her main issue is chronic neck pain following a motorcycle accident one year ago." Tr. 622. Dr. Mathur's notes from this visit do not reference anxiety. Tr. 622-24. After this visit, Dr. Mathur saw Plaintiff four times in 2018 and made the following assessments of Plaintiff's condition from those visits: chronic low back pain and radiculopathy, osteopenia, nicotine dependence, impaired fasting glucose, and hypercholesterolemia. Tr. 611, 613, 615, 621. At three of those four visits, Dr. Mathur noted that Plaintiff's affect/demeanor was anxious. Tr. 611, 613, 615, 620.   In September 2018, Dr. Mathur ordered x-ray imaging of Plaintiff's spine which reflected bilateral spondylolysis at L5-S1. Tr. 751. In October 2018, magnetic resonance imaging of Plaintiff's lumbar spine reflected mild spinal stenosis at L3-4. Tr. 626.

Dr. Mathur saw Plaintiff on six occasions in 2019 and made the following assessments of

Plaintiff's condition from those visits: peripheral arterial disease, nicotine dependence, chronic low back pain and radiculopathy, urge incontinence, transient limb paresis, chronic neck pain, and left hemicranial headache.  Tr. 1070, 1075, 1077, 1079-80, 1082, 1084.  At five of those six visits, Dr. Mathur noted that Plaintiff's affect/demeanor was anxious.  Tr. 1070, 1077, 1080, 1082, 1084.  A nurse practitioner at the Staunton Clinic saw Plaintiff on one occasion in July 2019 and noted that Plaintiff's affect/demeanor was anxious; the nurse practitioner's assessment of Plaintiff was restless leg syndrome and nicotine dependence.  Tr. 1073-74.  It appears that Plaintiff's last saw Dr. Manish on July 23, 2019.  Tr. 1070.  In this claim for DIB, Plaintiff's alleged onset date is November 22, 2019.

Plaintiff started treating with a different primary care provider, Dr. Bryan Steele, in July 2020.  Tr. 1295.  From July 2020-November 2021, none of Dr. Steele's records reflect that he assessed or treated Plaintiff for anxiety.  Tr. 1284, 1289, 1293, 1297-98.  In November 2021, Plaintiff saw Dr. Steele and reported to him that she was "getting 3-4 hours [of sleep] a night" and was "very anxious." Tr. 1275.  Plaintiff explained that she was concerned about her son who was recently released from prison and that she was serving as a caregiver to her father and uncle. Tr. 1278.  In the Assessment/Plan for this visit, Dr. Steele did not list anxiety but did list "family problems" and "insomnia" and prescribed hydroxyzine.  Tr. 1278-79.  Relevant to Plaintiff's claim for DIB, her last date insured was December 31, 2021.

In February 2022, Plaintiff presented to Dr. Steele with complaints of chest pain, bilateral shoulder pain, anxiety, and depression.  Dr. Steele noted that, regarding her anxiety, she had "problems going on in life."  Tr.  1541.  Plaintiff was screened for generalized anxiety disorder and received a score of 21; the record provides no information on the import of her score.  Tr.

1544. However, Dr. Steele's assessment of Plaintiff for this visit included "anxiety" and he prescribed Buspirone to her. Tr. 1545. In March 2022, Plaintiff presented to the Emergency Department at Alton Memorial Hospital with chest pain "on and off for the past 3 weeks" that was aggravated with exertion and movement. Tr. 1822. In the Review of Systems, a staff member noted next to "Psychiatric/Behavioral" that Plaintiff was "Negative for depression. The patient is nervous/anxious." Tr. 1824. Upon physical exam, a staff member noted next to "Psychiatric" that Plaintiff had "normal affect, good judgment." Tr. 1825. Under the Assessment/Plan, Dr. Nazanin Kheirkhahan noted "patient with a history of anxiety. Patient states that for the past few weeks her anxiety level has increased. She states that she does not really get panic attacks. [W]ill continue home medication." Tr. 1828. Three weeks later, Plaintiff saw Dr. Steele and he noted that she was "stable and doing well." Tr. 1538. Dr. Steele listed "anxiety" in the Assessment/Plan and prescribed Duloxetine to Plaintiff. Tr. 1538.

### 2. Agency Records

Plaintiff applied for disability insurance benefits on February 22, 2021 and completed a function report on June 26, 2021. Tr. 492, 528-535. She provided the following information in response to the question "[h]ow do your illnesses, injuries, or conditions limit your ability to work?":

> I have severe pain in neck, left shoulder… [a]rms are weak, heavy …pain down to hands…drop things all [the] time. I have to rest neck off and on all day. Pain down legs, sometimes give out, and tingling. Can't sit long 15-20 minutes. Walking about 15 minutes. Will get headaches if I don't rest throughout the day.

Tr. 528.

For final remarks, Plaintiff added:

> I have jumpy legs at night, depression from not being able to do the things I always did. I have been able to work up until…the accident. I have tried several different types of med, physical therapy, shots in neck and shoulder and cannot get any relief. Feels like my shoulder gets stabbed…I can be just sitting there and get pain that brings tears to my eyes, muscle spasms in neck all the time.

Tr. 535.

Plaintiff completed another function report on February 3, 2022. Tr. 547-554. She wrote that she had lower back pain and that she would "drop stuff all the time." Tr. 547. She also mentioned that she had surgery on her right hand and elbow in December 2021 and had more pain in her hand and wrist. Tr. 554. Her elbow was numb. Tr. 554. "Jumpy" legs caused her insomnia but medicine made her sleep. Tr. 554. She explained "it gets more and more depressing." Tr. 554.

### 3. Medical Source

Bonnie Lammers, M.D. (state agency medical consultant) reviewed Plaintiff's records and noted that Plaintiff had cervical and lumbar degenerative joint/degenerative disc disease, as well as carpal tunnel syndrome. Tr. 376. She opined that Plaintiff could stand/walk and sit for about six hours in an eight-hour workday and that she could occasionally climb ramps/stairs, balance, bend at the waist, and crawl. Tr. 374-76. Dr. Lammers further opined that Plaintiff could frequently reach overhead with either arm and could occasionally lift and/or carry 20 pounds. Tr. 374-76.

### 4. Evidentiary Hearing

The ALJ conducted an evidentiary hearing on January 19, 2023. Tr. 294. Plaintiff appeared with her attorney. Tr. 294. Plaintiff testified that in 2018, she started receiving treatment for her anxiety with her primary care provider. Tr. 308, 323. Medicine helps her

"somewhat." Tr. 309. Prior to the motorcycle accident, she did not have anxiety. Tr. 309. She has panic attacks "a couple times a month" that last anywhere from 15 minutes to all day. Tr. 312. She becomes anxious if she is around more than eight people. Tr. 315.

## Analysis

Plaintiff contends that the ALJ erred by failing to consider her anxiety and lumbar spine impairment as medically determinable impairments that impacted her work-related activities. The ALJ must address "all of [Plaintiff's] medically determinable impairments" of which he was aware. *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). The regulations define "medically determinable impairment" as one that "can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "established by objective medical evidence from an acceptable medical source." 20 C.F.R. §404.1521. The ALJ will not use "[the claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id*. After the ALJ finds that the claimant has a medically determinable impairment, the ALJ then determines whether it is a severe impairment. *Id*.

   I. **Anxiety**

The ALJ did not list anxiety as a severe medically determinable impairment at Step 2, nor did he consider it at Step 3 when determining whether Plaintiff's impairments met or medically equaled the severity of one of the listed impairments. Tr. 279, 280. Plaintiff contends that he "effectively treat[ed] [her anxiety] as a non-medically determinable impairment", and the Court agrees with this contention. Nonetheless, a "logical bridge" exists between the medical evidence and the exclusion of anxiety from Plaintiff's medically determinable impairments.

To support her argument that the ALJ erred, Plaintiff merely points to Dr. Mathur's notes

from June 2018-July 2019 and the record from Plaintiff's emergency room visit in March 2022 for chest pain. Plaintiff must establish that she was disabled between November 22, 2019 and December 31, 2021. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). The Court acknowledges that if Plaintiff had the medically determinable impairment of anxiety in June 2018-July 2019 (when she was seeing Dr. Mathur and his records indicate that her affect/demeanor was anxious), then logically she would/could suffer from the same medically determinable impairment in November 2019-December 2021. Regardless, Plaintiff fails to point the Court to anything in her records that suggests the ALJ disregarded evidence that her anxiety was medically determinable. Plaintiff does not point the Court to any authority (nor is the Court aware of any) that suggests a doctor's observation of a patient's affect is, by itself, a "medically acceptable clinical diagnostic technique." The regulations clearly state that a physician's diagnosis or opinion (by itself) does not establish a medically determinable impairment. *Thomas v. Colvin*, 826 F.3d 954, 959 (7th Cir. 2016) ("a physician's diagnosis...is not alone sufficient to establish [a] condition as an impairment." Here, Dr. Mathur never even diagnosed Plaintiff with anxiety, nor did he treat her for anxiety or otherwise even mention anxiety in his notes.

From the Court's review of Plaintiff's medical records, it appears that the generalized anxiety disorder screening performed at Dr. Steele's office in February 2022 was the first time any type of clinical diagnostic testing was performed regarding Plaintiff's anxiety. Plaintiff does not mention Dr. Steele's records anywhere in her brief. The Court notes that Dr. Steele's records reflect that Plaintiff first complained of anxiety to Dr. Steele in November 2021 and explained that family issues were causing her stress. Dr. Steele's assessment of her included "insomnia" and "family problems" and he gave her medicine to help her sleep, but it was not until three months

later (and after Plaintiff's last date insured) that Plaintiff underwent screening and received medication for anxiety.

Most of Plaintiff's argument rests on the ALJ's failure to perform the "special" technique, which is a procedure outlined in the regulations for evaluating mental health conditions. *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013). However, the first step of the special technique is to determine whether the mental health condition constitutes a "medically determinable mental impairment." *Id.*, *citing* 20 C.F.R. § 404.1520a(b)(1). If the ALJ determines the mental health condition constitutes a medically determinable mental health impairment, then he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment." *Id*. The ALJ then uses a specific method to rate the claimant's degree of functional limitation in four areas (activities of daily living; social functioning; concentration, persistence, and pace; episodes of decompensation). *Id.*, *citing* § 404.1520a(c).

In this case, the ALJ did not have to perform the special technique because the evidence does not indicate that Plaintiff's anxiety was a medically determinable impairment during the relevant time period. *Orienti v. Astrue*, 958 F. Supp. 2d 961, 973-74 (N. D. Ill. 2013). Of course, the ALJ did not explicitly state that he found Plaintiff's anxiety to be non-medically determinable, but the regulations only required the ALJ to provide rationale for a finding that Plaintiff's anxiety *was* medically determinable. § 404.1520a(b)(1). The ALJ was not required to discuss every "snippet" of testimony and/or medical records that might be inconsistent with his overall findings. *Pepper*, *citing Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). The evidence logically results in the exclusion of anxiety from Plaintiff's medically determinable impairments.

   **II. Lumbar back pain**

Plaintiff also contends that the ALJ improperly failed to find that her lumbar spine impairment is medically determinable. This argument is not supported by the record. The ALJ did not include her lumbar spine impairment at Step Two when he listed her severe medically determinable impairments, but Step Two is merely a threshold for proceeding to Step Three-and the ALJ proceeded to Step Three in this case-so "even if there were a mistake at Step Two, it does not matter." *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015) (*citing Arnett v. Astrue*, 676 F. 3d 586, 591 (7th Cir. 2012) ("whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one impairment.").

At Step 3, and contrary to Plaintiff's assertions otherwise, the ALJ referenced Plaintiff's lumbar spine issues. He noted that "in testimony and throughout the record, the claimant has reported disability due to low back pain, degenerative disc disease, [and other conditions]……after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 282. Moreover, the ALJ discussed opinions by Dr. Bonnie Lammers that he found persuasive in determining Plaintiff's RFC. Tr. 284. Dr. Lammers specifically referenced Plaintiff's low back pain and lumbar degenerative disc disease in finding that Plaintiff's reported symptoms were partially consistent with the medical record. Tr. 376. The ALJ adopted Dr. Lammers' RFC findings (except that he found Plaintiff had greater limitations for overhead reaching than opined by Dr. Lammers). Tr. 284. The record reflects a logical bridge between the RFC and the medical evidence regarding Plaintiff's lumbar spine impairments, and Plaintiff therefore fails to establish the ALJ committed an error requiring remand in the way he considered her lumbar spine condition.

**Conclusion**

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for disability insurance benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED: September 15, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
